Maintenance of the Court, Janet Ferriero of the City of Hillsborough and Officer Slade. Also defendants, a little bit of a start for us. Also defendants in this matter is Washington County and Officer McLeod. And the Council of the Public Defense Council, Crystal Moore is here. I'm going to reserve five minutes for rebuttal and share that with Mr. Gilmour. So you will not be there on your time initially? Correct. We're here to talk about the District Court's refusal to apply the Qualified Immunity Doctrine to bar the excessive force claim against the individual defendants. And it's refusal to apply the Hague Doctrine to bar the excessive force claim and the state law claims, civil mental jurisdiction claims, in addition to the trial court's failure to apply issue preclusion under Oregon state law, and bar all of the claims. And we're here to ask for a reversal of that decision and to dismiss this entire claim. Mr. Starkman is going to address Qualified Immunity. We've limited time and it sounds like you're already quite up to speed on Qualified Immunity. And we've supplemented the record with a white versus poly decision, and we do think that that is out of under these circumstances because the law requires that there be very specific precedent to place the conclusion that the officers acted contrary to the Constitution beyond debate. And there is no such authority here. The District Court can say one nor did the plaintiff. The Qualified Immunity standard depends on the specific facts of the case, and it's supposed to protect in quoting from white versus poly, which in turn is quoting from Melonex, all but the incompetent and those who knowingly violated the law are protected. Well, the circumstances here are somewhat troubling. You have a SWAT team that's gone on to his property in the middle of the night, in the dark of night, and so they're on his property, his backyard, and his wife is fearful, understandably. It's a high-crime neighborhood. And so this evolves with the homeowners being surprised by police activity on their property or immediately across the street at one point. And so if we look at his account, it's he went out the backyard. Who are you? And then he walks out the front door because the people ran around the house, and he goes out the front door and he yells at them, and then he becomes concerned that he's not getting an appropriate response, or he gets ultimately gets his gun and comes out on the porch, and he says he didn't point it at the officers and he didn't fire a shot. I understand that's a disputed fact, apparently. But you now have a situation where the police have actually trespassed on his property and created this event, and then he winds up trying to defend and protect his home, and he gets shot for his activities. So why isn't that an intrusion, a constitutional violation there? And then the question is, or do we define the fact situation somehow differently from that? Well, some of your facts are correct. However, the officers were not on the plaintiff's property at the time of the shooting. There were some officers on. But the answer to your question about why you don't view it as a homeowner property protection case is because of the plaintiff's plea. That's why the briefing is all about the plaintiff's plea. The plaintiff pled no low contender, but was convicted in the judgment. The state court said, okay, you're going to take the rap, in effect, on the endangerment. But I understand you have a case against the cops, and that will get litigated elsewhere. So we still have the issue, I know, in this case about what's the effect of a no low as opposed to a guilty plea. I'd still like you to come back and say, okay, for purposes of 1983, at what point do we define the situation that the police were facing and attempt to justify or qualify their behavior? Well, when the plaintiff made the plea, the plaintiff acknowledged that he was going to be convicted of the crimes that he was pleading to. And he, yes, and the crimes include the definition of crimes he agreed to accept a conviction of, a state that he intentionally attempted to place another in fear of imminent serious physical injury. Attempted, right, so attempted to be a failed attempt. So how does that conviction tell us anything about what the officers were endangered? Well, it's that combined with the facts that we know. He was standing there with a .44 magnum with an 8 1⁄2 inch barrel. So it went on just looking at the convictions. He admits he was standing there with a very large gun, and then he said, I'm going to go get a gun. He went in the house and came back out with the gun. The plaintiff says, you'll see in his deposition on page 4, or in the brazen page 12, he tells you, he shows us, there's a picture in the brief where he held the gun. So however he characterizes it, he shows it, and his arms are like this. And so it's there other times. Excuse me? That's more than 8 inches. What's your suggestion? Oh, the size. I wasn't indicating the size of the gun. The size of the gun. It's 8 inches. He was pointing the gun at the ground, not up. I think he said that at one point, but he demonstrated in his deposition where his arms were, and the gun demonstrates, the picture of the gun is also in the record. And that shows where the bullet went. Does he think that's in his favor at this stage? I think you have to look at it in the light of the keys that are involved here, which the plaintiff is mounting. Right, but after that, that doesn't involve any of the deposition testimony. The plea was attempt, and so my question was, is an attempt different from actual danger? That was one of the pleas. It is reckless endangerment. It is recklessly engaging in conduct which creates a substantial risk of serious physical injury. You don't have to wait until a suspect actually shoots at you in order to have the protection of qualified immunity. There's no question that the plaintiff walked out. I think he said he took two steps. In his deposition, each of the pictures shows where his hands were. Regardless if they were down and coming up or already up, these officers were in imminent danger. Okay, so you got back to my question. I was trying to find out where you draw the timeline. And as I understand, the timeline from their perspective starts when he's out on the porch with a gun in his hands and that all that went before that provoked him into this where he's arguably defending his house is pure background. That the qualified immunity analysis should look at what the police officers could understand. They were within their rights to do, including shooting him. Once he appeared on the porch with the gun in hand, have you reinforced that with this having put no load to the fact that that constituted reckless endangerment? Yes. So that's where we define the hypothetical or the scenario for purposes of establishing whether it's clearly established or not. Right. As he's out on the porch with the gun, the gun officers don't have to wait to make a decision until he actually fires. Their lives were in danger at that point when he came out on the porch with the gun. So even if we agree with you about that, I think there may be qualified immunity. Is there any reason that we should look at a broader timeline to decide whether there was a constitutional violation here so that maybe there's more law in the next case? I think the timeline involves what ought to be focused on the gun. The gun is the thing that drew the fire. We ignore the fact that the officers, according to the allegations on the other side, were that the officer's name on the property did not explain it or did not announce it in darkness and created the situation. You should ignore all that? Well, by virtue of the plea that the plaintiff has, he can have the right to assert any defenses, including protection of property. So I don't think that should be part of your analysis at all. Excuse me? Can you give that up for statute 83 purposes? Well, because that's a defense he agreed, and the law is that he agreed to give up all his rights to defend against the claims as well as any defenses he may have to the charge. That's ER5 subgroup C. Yes, this is what he gave up. This was the plea that he made, and it's for federal purposes as well. And I believe there's a case in our brief that says that, and I don't have it on the tip of my tongue, and I can say it when I come back up for rebuttal. But, yeah, he doesn't have available defenses to these charges, and hence that's not how you should look at this because that's not the definition of the claim that we're looking at here. Is there an Oregon case establishing that a no contest plea has perclusive effect? Yeah, I think the State Farm v. Selloff case did. That case was a guilty plea, not a no love plea. It was a guilty plea, and the reason that the court found that it was perclusive in that case is because the trial court had an opportunity and had to examine facts to determine whether there was a basis for the plea. And that's 135.395. The exact statute applies to no love pleas as well, and it's a safeguard similarly for served guilty pleas and no love pleas. And the same statute was in force as to no love plea, and the court took evidence, and the trial court said, well, that's ample evidence to support the plea that we're looking at here. But we don't have an Oregon case that's specifically about no love pleas. Correct. Also, there's a statute, 153.108, that's in our brief, and it says for the purpose of a violation different than a misdemeanor or a felony, you can't use those from race, gender, color, or a plain provision for detention purposes in a civil action. In other words, you're having passed a statute that says you can't do that with a violation, and how can you say that you can't use it for the purpose of a felony or misdemeanor? There are state claims in this as well. So on the Oregon law, uncertainty about no love pleas, you have to analogize. Should we certify to the Oregon Supreme Court so we can get a definitive ruling from them about what the preclusive effect is of a no love plea? Well, we ask the district court to do that. The district court turned us down. If you don't find these. I'm asking you. Yes. We should. I think you could do that, yes. So it's not a no love plea. Are you recommending a no love? I would say I recommend it because the case is not exactly on point, but the basis for it is on point. So I don't think you have to, but I do think that it's a point that's open, and that's something that the Supreme Court could certainly speak to. I want to make another comment about the trial judges. The situation that happened in the trial judge that you mentioned in the trial court, the plea was accepted and taken without any conditions whatsoever relating to the federal claim or anything else other than a sentencing recommendation long before the trial judge started making these gratuitous comments. The plaintiff came in with a piece of paper that's an exhibit, it's CR 5 and 6, in which he says he agrees to plead guilty. He agrees that the outcome of the guilty plea is conviction of the crime, and he declares in paragraph 8 that there are no conditions to this other than the district attorney making a recommendation agreeing to sentencing. So he didn't come in saying, oh, only if I can keep my federal claims can I make this plea. And before the court made its comments, the court said, I see you have a guilty plea. The attorney said he wants to go through with this. I explained it to him. He understands. And then the plaintiff also told the trial judge, yes, that's all true. I mean, it's no contest. He was a no-contest plea. But he said. In your view, what is the difference between that and a guilty plea? It seems like you're making them exactly the same, but this form has two different things. You have to circle or check. Under Oregon law, they have the exact same effect. So why are there two different things on the form? To get people to look. It's true. It gets people to the table. It's a practical thing. Because you get to the table with a no-contest plea, and thereby avoid litigation for people that you otherwise can't get to the table to do an actual plea area to get a guilty plea. So it's just different. In this case, what's the benefit to the defendant? The benefit to the defendant of doing a low plea? Yeah. Well, you know, it's a criminal trial, but the effect of the plea is not any different than the guilty plea. So he just avoids a trial where his rights might be litigation. That's right. There's not a significant difference, and the statutes define them the same. There's no difference in the law in the effect of either a no-low plea or a guilty plea. Oh, that's true. So that's not true. That's true, but you look to state law, and Oregon state law chapter 135 defines them exactly the same way. It ends up a conviction of a crime in which you have a no-low plea. So are defendants just being tricked? I mean, why are there two options on this form if they're exactly the same? Because, one, you actually plead guilty, and, one, you don't, and the district attorney comes in and has to say where his proof is. So the plaintiff never has to say, yeah, I did it. He can just say, I don't contest it, and the district attorney comes in, as in this case, and demonstrates sort of an offer of proof, what they would prove. Yeah. Are you saying that's what happened in Solid Code, too, where there was a guilty plea? It's the same circumstance. Right. So the idea of the district attorney offering evidence, is this helping the plaintiff, too? You know, the judge had to satisfy himself that he's required to before he enters a judgment on either a guilty or a no-low plea, that there is a factual basis for the crime's plead or something worse than that. So, again, regardless, you are not different? Well, in a guilty plea, the defendant says what the, typically the defendant says what they're pleading to, and the words come out of the defendant's lips, and in a no-low, the plaintiff says, or the defendant says, I'm going to plead no-low, and then the district attorney must supply the evidence to support the crimes that a no-low plea is going to be tended to. So you confess in a guilty plea rather than just pleading an exact way outside of the plea? That's exactly it. But the point is they have the exact same legal consequence, and the plaintiff agreed when he signed this no-low form that it's going to have the same impact. It's going to result in a conviction. It says it's going to result in a conviction. I understand that. And he says there are no conditions to that conviction. So Judge Jones' gratuitous comments later really are, have nothing to do with what happened with complaint. So tomorrow. He's an old public defender. He's not going to go away ever. We took you over your time. We'll give you two minutes for rebuttal, even though we've already given you two minutes. Yeah, I see that. I apologize. I may have to use the court. Excuse me. Is that good? I may have to use the court. Counsel, I don't know where to start. Perhaps at the very tail end of Counsel's comments, as a former public defender myself, and have entered many, many no-contest pleas, the punchline of a no-contest plea is the court can impose the same penalty and enter the same judgment of conviction as with a guilty plea, to the extent that they're adequate. There are a variety of reasons that criminal defendants enter no-contest pleas. One of them is there's a dispute of facts, and they know really, really certainly that their word is not going to stand up against that of a police officer, and the deal is too sweet to pass up. And there is also a whole raft of cases in which the question is, to what extent is the plea going to jeopardize a subsequent civil claim? I would suggest that this case touches on both of those circumstances. What the effect of a real effect of a no-contest plea is, and I think we have to go back to Alford, is what Alford said specifically was that a no-no plea is not an express admission of guilt, but, and I think this is the key to it, a consent by the defendant that he may be punished as if he were guilty. And that's exactly what this is. What the court is, in effect, saying in a no-contest plea is, in asking the DA what the facts were, the judge is saying, basically, if the state were actually to prove those facts, that would be enough for a conviction. And the defendant is saying, okay, you know, I can say something. Is there a few common or a bigger case that says a no-contest plea does not have a preclusive effect? No. So neither side has a case here? No. It's one of those cases that has not been specifically addressed by the Supreme Court. And in this particular case, there are a couple subsidiary issues that I think are significant. If Judge Fischer does decide, maybe, you should certify this judgment of liability, it was your honor's suggestion, if the court agrees. The question is a little bit more complicated than that because it involves the effect of what it is the deputy district attorney said in the context of the facility. And to what extent does that inform what is actually being precluded? Is your position on whether we should certify this question? My best interpretation, I have no problem with the notion of certifying the Supreme Court and all those people that do a good job at it. But this case is five years old now, and it's not going to get any younger. So I'm reluctant to sign off on that, based solely on the fact that the clients are still waiting for some resolution. I have some concerns about that. Okay. And that's a legitimate concern. But as an institutional matter, we don't like to take up court and Supreme Court time if there's not a more general benefit. So my question is, given your experience, would it be helpful to the Oregon Bar, the defense bar in particular, to have a clarification from the Oregon Supreme Court? That's a very helpful question. Yeah, I mean, practically speaking, I think that would be helpful, although I'm not sure that we need to get there in this particular case. And let me explain that part. And if the court disagrees with that part, then maybe this is the case to certify it on. And the reason that I hesitate there is the way that, as set forth in our brief, the way that we and I have approached this whole question of perpetuity is let's assume that no currency stands for police perfections. The question then is, what is actually being precluded? The Supreme Court in the Montana case talks about whether or not in the 1983 case, a state court guilty, I think it was a guilty plea in that case, but whether or not the issue brought in the 1983 case was actually presented to the state court for resolution, whether the defendant actually knew that and was agreeing to its resolution in that particular state forum. Clearly, in this case, that's not the circumstance. And Judge Jones, in this third of candle, when Judge Jones was my former employer, when we were both in the public defender's office, Judge Jones was not making gratuitous comments. Not that I feel any need to defend Judge Jones, but he wasn't making any gratuitous comments. What he was doing was he was doing just what judges do, and that was independently ascertaining for himself, regardless of what's written down on paper and regardless of what the representations of counsel were. He was making sure for himself that the defendant before him was making a knowing, intelligent, and voluntary change of plea. And if you are going to hear him, he was going beyond the document. The document doesn't sign him off where the lawyer says, here's something here and what's written in the document. Well, this is not in the record. I don't know that it would be a surprise if I suggested that most criminal defendants who are signing the petition of one sort or another don't read the facts. They don't read the details. They scan it and sign it here to get the deal done and to get out of the courtroom, hopefully. Judge Jones was being particularly meticulous about this to ascertain that, in fact, the defendant knew exactly what the collateral consequences of this were going to be and that he was... So your opposing counsel says, the judge didn't make those comments until after the signatures happened and it was all over anyway. How do you respond to that? How is it relevant if it all was drafted in the past? Because it's not over until the judge says, I'm going to receive the plea and I enter into judgment. But the agreement is signed before that. There was an agreement, but even after the agreement is signed, there's nothing in state law that would obligate the judge to accept it if the judge... Does it go to the defendant's state of mind if it happened after, right? If the issue is what did he actually agree to, then what the judge does after doesn't affect that. No, what I'm saying is if Judge Jones said to him, you understand, sir, that if you plead no contest, I'm going to find you guilty of the charge and I'm going to impose a sentence, and this is going to screw up any chance you have for maintaining your civil claim, at that point, the client could be expected to turn on his attorney and say, what the hell? Excuse me. And at that point, the plea is blown. The deal is blown regardless of what's on the paper and what the signature said. And it becomes, at that point, it becomes an express part of the agreement or the understanding of the defendant in terms of what he's doing. So what the judge tells him can alter the agreement. I'm sorry. So what the judge tells him can alter the agreement. In other words, the agreement as it stands, and that's, let's suppose this, says that it's got a preclusive effect, and then Judge Jones' comments can be taken as saying, no, there is no preclusive effect. Well, I guess the question that I have is, or the issue that's raised, which actually touches on the heck of the issue of this, is if, as the expectation of the parties, call it a modification of the contract or a modification or an amendment or supplement to the agreement, at the time that there are changes in the agreement, it's not in what the judge says. You expect me, like, and then the judge says, if something, and let's say that the judge is wrong, well, the question then, and that impacts on the voluntary, ultimately the voluntariness of the plea, because up until the time the judge says, I accept the plea or I'm your guilty, the client can bail. The client can say, hey, you know, I changed my words on that one, and now I'm going to be fine It does have preclusive effect. I mean, you go back and it is, so you set aside. Yes. We file for the calendar, organ law, there's post-conviction relief, and here we are five years later, in order to maintain, following that line, in order to maintain his civil case, he'd have to go back into state court, file for post-conviction relief, and I would suggest that there's a real strong possibility that in a case like this, where the judge makes an affirmative representation to the client as to what the law is, and the client says, cool, I got it, I understand, I'm still willing to go through with the plea, and then things go sideways on him. I would say that there is a, at least a palpable argument, that the plea voluntarily does have preclusive effect. I was going to say this, I'm not going to have preclusive effect. Instead, I'm going to say there are going to be other proceedings, and I'm not involved in those, and this is not going to affect me. Yeah, sure. He didn't say, he didn't talk about collateral. He said, I got it at a point which displaced my itch, perhaps, issued a preclusive claim for exclusion. He didn't discuss those purposefully, or specifically, but he did recognize that there's pending civil litigation on this issue in federal court, and this is not going to have an impact on that. And that, I think, is close enough to saying, don't worry about the effect of this on that. That's what you interpreted, but, again, they reached an agreement, and the judge can't alter the terms of the agreement just by what he says. Well, the judge can alter the understanding of the agreement. The judge can say, so this is all wrong. I'm sorry. The judge can be wrong. The judge can be wrong, but if the judge is wrong, then that certainly, even if the judge is wrong, that informs the criminal defendant's understanding of exactly what he's buying into by waiving his right to the jury trial. I just got him on this lady because he signed the agreement. That's only part of the answer, Your Honor, because, again, he could sign the agreement, and the judge in his inquiry with the voluntariness could find out that, in fact, there's something else going on. Somebody's got a gun to his head, and somebody paid him off to do this, and decided, I'm not going to do it. You can sign whatever you want. I'm not going to do it. It's not here, however. That's not here. No. Your Honor, just theoretically, that could happen, so I guess I'm a little bit reluctant to generalize in that particular regard. Now, in this, if, turning to the state claims, if the, let's suppose, the 1983, the 1983 drops out, how would all of us feel? How would all of us feel? Well, I guess this isn't the end. We don't know what's going to happen. If this goes back to if we were to say that, in preclusion, that didn't foreclose the state claims, then this would go back to how could the district court try a state claim or what? That was everybody's literacy. And Judge Mossman indicated, although, again, I don't want to hold him at this, and I may be misremembering this, indicated that he would be inclined to hang on to it. Say we disagree with you about the preclusion issues, and we think that a no low plea can have preclusive effect, and say we ignore what the judge said. Do you have an argument that the elements of what he pled to do not match what would be necessary to preclude these state claims anyway? Yes, indeed, I do, Your Honor. And it was very well set out in the brief, I think. But, for example, the menacing, what happens with the no low is that he winds up, the finding of fact is he did the things that were alleged, and we should just use the statutory language, which said in menacing, it's attempting to cause fear of imminent physical injury. The standard in Graham is immediate physical injury. I was accused of quibbling in drawing that distinction. That was the decision that the Oregon Court of Appeals made, and just from a family tradition of quibbling, we quibble all the time, that's what we do for a living, is quibble. So, yeah, I think the distinction is he pled guilty to something that simply is not preclusive. You know, the whole question of the reasonableness of the officer's conduct is entirely independent from either of the things to which he was found guilty. And I noticed that my red light is on. Anything else on that? I would like to start out saying the case that I was referring to, that's my analogy, is called the state versus law court. Oh, your microphone. Oh, I'm sorry, 43 ORF 639, relating to the defense of property, not being a defense. I'm sorry, what was the case? 43 ORF 639, state versus law court. Law court. I want to reiterate that we do embrace the idea of certification of the state law question if the court feels it's necessary, to the point that counsel just discussed about the immediacy versus imminence of the danger. And while plea is two things, and one is menacing, if the person intends to place another in fear of imminence, serious and simple injury, and the other one has conviction on, is conduct which creates a substantial risk of serious and simple injury to another person. In the context of facts in this case, you have to do a fact-specific inquiry. When someone's standing on his porch with a .44 Magnum revolver, I don't think it matters whether you're talking about imminent versus immediate. Under the facts of this case, not only the plea, but also in the depositions that are before you, there's no place for quibbling between immediate and imminent in the context of this case. We have a case that tells us we should look beyond the elements of the crime and look at other facts to determine what the preclusive effect would look like. I'm saying the facts. I'm not saying just looking at the preclusive effect. But to determine the facts of what happened, you have a record of the summary judgment. And so I think you can take the preclusive effect and combine it with the facts that are in the record relating to how the events occurred. But even if you don't do that, the words that we have cases in our brief that talk about immediate and imminent mean virtually the same thing. And this court's adopted in a hack doctrine analysis. Yet a different word that's the same. And it is indeed quibbling, we believe. I also wanted to say that the question of hack was not before Judge Jones. There was no discussion about hack or issue preclusion at all. Again, the plea was done. He signed it. He said he agreed to it. But long before Judge Jones started into his commentary, relating to, you know, there's another case out there. And it was general commentary. It wasn't that. I see my right is on it. I've already commented on it. Thank you. Thank you. Thank you both of us for your help. The case is submitted. You are adjourned for the day.
judges: Fisher, Friedland, Mahan